UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDRICK DON KILMER,<br><br>　　　　　　　Petitioner,<br><br>　v.<br><br>MARION SPEARMAN,<br><br>　　　　　　　Respondent. | Case No. 11-cv-05560-YGR<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

## INTRODUCTION

This matter is now before the Court for consideration of Frederick Don Kilmer's ("Petitioner") pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2008 conviction in San Francisco County Superior Court. For the reasons set forth below, the petition is DENIED. In addition, no certificate of appealability will be issued.

## BACKGROUND

**I.　Case History**

A jury in San Francisco County Superior Court found Petitioner guilty of annoying or molesting a child under age eighteen with prior sex convictions (Cal. Pen. Code § 647.6(c)(2)), and of having two prior "strike" convictions (Cal. Pen. Code § 1170.12). On March 20, 2009, the trial court sentenced Petitioner to a term of twenty-five years to life in state prison under California Penal Code Sections 1170.12(c)(2)(A)(ii). The California Court of Appeal affirmed the conviction and sentence in an unpublished opinion, and the California Supreme Court summarily denied a petition for review. (Ans. Ex. E; Mot. Dism. Ex. A (Dkt. No. 12-1).) Thereafter, Petitioner filed habeas petitions in the San Francisco County Superior Court, the California Court of Appeal, and the California Supreme Court, all of which were denied. (Mot. Dism. Ex. B (Dkt.

No. 12-2, 12-3).) He filed the instant federal petition on November 17, 2011, and it was subsequently stayed to allow Petitioner to exhaust additional claims in the state courts. After doing so, Petitioner filed the First Amended Petition with ten claims. (Dkt. No. 39.) Respondent's motion to dismiss seven of the claims was granted, leaving Claims 1, 9, and 10 remaining. Respondent filed an answer denying those claims, along with a supporting memorandum and exhibits, and Petitioner filed a traverse.

**II.   Facts**

The California Court of Appeal described the relevant facts as follows:

> Appellant was convicted of annoying or molesting 13-year-old Thomas C.
>
> In July 2008, Thomas was living in the Bernal Heights neighborhood of San Francisco with his father and stepmother. Thomas recently had moved to San Francisco from the smaller community of Hanford, California.
>
> On July 11, 2008, Thomas was in his neighborhood when he encountered appellant who was walking his dog. Appellant chatted with Thomas for about 20 minutes asking where he lived and whether he liked hip hop music. At that point, appellant asked Thomas his nationality. When Thomas replied that he was Irish, appellant said he was "sorry" because the Irish have "the smallest dongs." The comment made Thomas uncomfortable but he continued to talk with appellant because he did not want to be rude. Later appellant told Thomas he was "AC/DC," and Thomas did not know what that meant. Appellant said it meant he was bisexual.
>
> The next day, Thomas saw appellant and a teenage boy working on appellant's van. Appellant called Thomas over and introduced him to the teenager, Craig, who appeared to Thomas to be 15. Thomas and Craig talked about their common interest in skateboarding. A few minutes later, appellant, Craig, and Thomas all went into appellant's house. Appellant commented that Thomas looked like a "dickhead" because the hat he was wearing had balls on it. Again, the comment made Thomas uncomfortable.
>
> Appellant asked the boys to get some food at a nearby Jack-in-the-Box. On the way there, Thomas asked Craig if appellant would try to touch or molest him. Craig said no.
>
> Thomas and Craig returned to appellant's house with the food. When they entered, Craig told Thomas to stop. A movie depicting two men engaging in sexual acts was playing on the television, and Craig did not want Thomas to see it. Craig obtained the remote and turned the movie off. Thomas saw Vaseline on the table and he guessed appellant had been masturbating. He felt disgusted. Appellant came into the room wearing only a bathrobe. After they ate, appellant and Thomas went to appellant's office. Appellant removed his robe to change and provided Thomas a full frontal view of his body. Thomas felt disturbed and uncomfortable. He went to the kitchen and told Craig that appellant had just changed in front of him.

2

Thomas stayed at appellant's house for another hour. Appellant asked Thomas if he wanted to do some work for him the following day for $10 per hour. Thomas needed the money and he agreed readily.

Thomas and Craig left appellant's house and went to a skate park. While there, Thomas's skateboard broke.

The next day, Sunday, July 13, 2008, Thomas went to appellant's house excited to make some money. Appellant asked Thomas personal questions such as whether he ever had sex, whether he masturbated, and if so, whether he used Vaseline. Appellant told Thomas he used speed because it made him feel "horny." He told Thomas that one time when he was younger, he woke up to find a friend sucking his penis and that he liked that. Appellant asked Thomas how big his penis was. Thomas made up a number.

Appellant and Thomas worked for a couple of hours hanging dry wall. At one point, appellant asked Thomas to measure his penis in the bathroom. Thomas went into the bathroom and pretended to measure his penis. He came out and gave appellant a number. Appellant replied, "do you want to prove that?" Thomas laughed like it was a joke. He was uncomfortable and he did not know what to do. Thomas worked until noon. Appellant gave him $30 and told him he would give him $80 more as an advance on next week's work so Thomas could buy a new skateboard. Appellant told Thomas that the next time he came, he would have to lift up his shirt to see whether the police had wired him. Thomas thought it was just a[n] excuse for appellant to touch him.

Thomas spoke to his father John C. about appellant, although Thomas did not mention the sexually explicit talk. John told Thomas to stay away from appellant. He accompanied Thomas to appellant's house so Thomas could collect the rest of the money he was promised.

That evening, Thomas's stepmother learned about the sexually explicit talk and that appellant had asked Thomas to measure his penis. She wanted to call the police. John, who had a serious drinking problem, did not make the call.

The next day, appellant spoke with Thomas and offered his father a job. Thomas did not think that was a good idea, but his father was unemployed at the time. Thomas took appellant to his house. Appellant spoke with John and offered him a plumbing job. John, who needed the work, accepted.

John worked for appellant for three days. While on the job, John met Robert Ponce who also was working for appellant. At one point, John asked Ponce for appellant's last name. He wanted to check Megan's list.

That evening, John's wife checked Megan's list and found that appellant had a prior conviction for committing lewd or lascivious acts on a minor. John went to Ponce's home and told him what he had learned. John and Ponce both decided to quit. However, Ponce asked John not to call the police until they had been paid. John agreed.

On Friday, July 18, 2008, after he was paid, John confronted appellant with a printout from Megan's list. He tossed the printout at appellant and told him "I hope you burn in hell for this."

The following Monday, John called the police.

3

>Based on these facts, an amended information was filed charging appellant with the offense we have set forth above. The amended information also alleged appellant had two prior strikes within the meaning of the three strikes law. (§ 667, subd. (e), 1170.12, subd. (c).)
>
>The case proceeded to trial where the prosecution presented the evidence we have set forth above. Appellant declined to testify and his counsel defended the charges by telling the jurors there was nothing sinister about one man changing in front of another or making off-color jokes about penis size. Counsel suggested the incident had been blown out of proportion because appellant had fired John and Thomas was following his father's lead.
>
>The jurors considering this evidence convicted appellant as charged and found the prior conviction allegations to be true. Subsequently, the court sentenced appellant to a three-strikes term of 25 years to life in prison.

*People v. Kilmer*, 2010 WL 2338657, *1-3 (Cal. Ct. App. June 11, 2010) (Ans. Ex. E.)

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 384–86 (2000), while the second prong applies to decisions based on factual determinations. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if

4

the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340. Where constitutional error is found, habeas relief is warranted only if the error at issue had a "substantial and injurious effect on the verdict." *Penry v. Johnson*, 532 U.S. 782, 796 (2001) (citation omitted).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that in determining whether the state court's decision is contrary to or involved an unreasonable application of clearly established federal law, or is based on an unreasonable determination of the facts, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claims in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). The highest state court to address the remaining three claims in the instant petition was the California Court of Appeal when it affirmed the judgment on direct appeal. (Ans. Ex. E.)

**DISCUSSION**

**1.     Amendment Charge under California Penal Code Section 647.6**

Petitioner claims that his right to due process and equal protection were violated when the trial court violated California Penal Code Section 1009 by allowing the prosecutor to amend the count in the information charging Petitioner with violating Section 647.6 --- annoying or molesting a child under age 18 --- after the jury had already been selected. Specifically, the information originally cited the incorrect subsection of Section 647.6, namely subsection (a)(1), and when this error came to light after jury selection, the trial court allowed the prosecutor to amend the information to cite subsection (c). Section 647.6(a)(1) is a misdemeanor, and Section 647.6(c) is a felony. Petitioner also claims that there was insufficient evidence to prove a violation

5

1 of Section 647.6(c) at the preliminary hearing because the prosecutor presented no evidence that

2 Petitioner had suffered prior child molestation convictions, an element of Section 647.6(c).

3    The California Court of Appeal denied this claim as follows:

> Appellant was convicted of violating section 647.6. Subdivision (a)(1) of that section makes it a misdemeanor to annoy or molest a child under the age of 18. Subdivision (b) makes it a felony or misdemeanor for any person to annoy or molest a child after having entered a dwelling house without consent. Subdivision (c)(2) makes it a felony for any person to annoy or molest a child if that person has a prior felony conviction for violating certain statutes including committing a lewd act on a child under section 288.
>
> On July 24, 2008, a complaint was filed charging appellant with three felony counts including a felony violation of section 647.6, subdivision (b). As is relevant here, the complaint alleged appellant had prior convictions in 1985 and 1991 for committing a lewd act on a child under section 288.
>
> A preliminary hearing was held on September 11, 2008. At the conclusion of the hearing, the prosecutor moved to amend the complaint to allege a violation of section 647.6, subdivision (a). The magistrate granted the motion and held appellant to answer for a "felony" violation of section 647.6, subdivision (a)(1). This clearly was a mistake because a violation of section 647.6, subdivision (a)(1) is a misdemeanor.
>
> The mistake was repeated in the information filed September 23, 2008. It charged appellant with a "felony" violation of section 647.6, subdivision (a)(1). The count went on to allege that appellant "did willfully and unlawfully annoy and molest a child, THOMAS C., under the age of eighteen years, said defendant having been previously convicted of ... Section 288." The count also alleged the two prior convictions: a December 1985 conviction for committing a lewd act on a child, and a[] December 1991 conviction for committing a lewd act on a child. The wording of the count and the prior conviction allegations make it clear that the prosecutor meant to allege a violation of section 647.6, subdivision (c)(2).
>
> No one noticed the mistake initially. Jury selection began on December 1, 2008, and the jury was sworn on December 4, 2008. The following day, defense counsel filed a "motion to strike surplusage and to clarify the information." Counsel moved to strike the word "felony" from the information and to strike the prior convictions arguing they were "irrelevant" to the misdemeanor violation of section 647.6, subdivision (a) that had been alleged. The prosecutor opposed the motion arguing appellant had waived the defects by not making a timely section 995 motion prior to the commencement of trial.
>
> The trial court conducted a hearing on appellant's motion and denied it ruling appellant had waived the right to object by failing to file a timely section 995 motion. The court also allowed the prosecutor to amend the information to charge the correct section 647.6, subdivision (c)(2) offense stating as follows: "I would just note on the face of the Information filed September 23rd, which I do think erroneously charges a 647.6(a)(1) as a felony. That same paragraph does include language that says, quote, 'Said defendant having been previously convicted of Penal Code Section 288,' unquote .[¶] And to the Court, the purpose of alleging those priors is in support of a ... (c)(2) felony. So, in other words, they got the subsections wrong without doubt. I mean, this is not the district attorney's

6

finest charging moment, let me tell you. But that's what happened here, clearly." Defense counsel made an oral section 995 motion arguing the prosecutor had not presented any evidence about the prior convictions at the preliminary hearing. The trial court denied the motion.

Appellant now contends the trial court erred when it denied his section 995 motion because the prosecutor did not present any evidence concerning the prior convictions at the preliminary hearing. The People concede that evidence concerning the prior convictions was not presented at the preliminary hearing. However, the People argue that omission is irrelevant because prior convictions are not an element of the charged offense. We need not wade into this debate because any possible error the court may have committed when it denied the section 995 motion was harmless. In *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 165 Cal.Rptr. 851, 612 P.2d 941, our Supreme Court ruled that irregularities at the preliminary hearing are not jurisdictional and that they require reversal "only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination." (*Id*. at p. 529, 165 Cal.Rptr. 851, 612 P.2d 941.) In *People v. Crittenden* (1994) 9 Cal.4th 83, 36 Cal.Rptr.2d 474, 885 P.2d 887, our Supreme Court stated that when "the evidence produced at trial amply supports the jury's finding, any question whether the evidence produced at the preliminary hearing supported the finding of probable cause is rendered moot." (*Id*. at p. 137, 36 Cal.Rptr.2d 474, 885 P.2d 887.)

Here, even if we were to assume, arguendo, that the trial court erred when it denied the section 995 motions because the prosecutor failed to present evidence concerning appellant's prior convictions at the preliminary hearing, that is not grounds for reversal. The prosecutor presented evidence to support those priors at *trial* thus rendering any possible prior deficiency in the evidence moot. Appellant's conviction need not be reversed on this ground.

In his reply brief, appellant contends that when the trial court allowed the prosecutor to amend the information, it violated section 1009 that states, in part: "An indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination." Appellant did not raise this argument in the trial court. He has forfeited the right to raise it on appeal. (*People v. Tafoya* (2007) 42 Cal.4th 147, 166, 64 Cal.Rptr.3d 163, 164 P.3d 590.) Indeed, because appellant first raised this issue in his reply brief, it is doubly forfeited. (*People v. Newton* (2007) 155 Cal.App.4th 1000, 1005, 66 Cal.Rptr.3d 422.)

*Kilmer*, 2010 WL 2338657 at *4-5.

Petitioner's claim that the trial court violated California Penal Code Section 1009 by allowing the charge to be amended after the jury was selected from Section 647.6(a)(1) to 647.6(c)(2) is a claim of state law error which is not a cognizable grounds for federal habeas relief. Federal habeas relief is not available for violations of state law. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Petitioner attempts to make a federal issue out of this claim by asserting that violating Section 1009 constitutes a violation of his federal constitutional rights to due process and equal protection. A petitioner may not transform a state law issue into a federal issue simply by

asserting that the violation of state law constituted a violation of his federal constitutional rights. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997) (holding that petitioner may not transform state law issue simply by asserting violation of due process). As indicated above, AEDPA limits federal habeas relief to violations of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Petitioner cites no Supreme Court authority, and this Court is aware of none, providing that the constitutional guarantees of due process and equal protection prohibit correcting the statutory subsection cited in an information following jury selection in order to match the charges described in that information. Absent such authority, federal habeas relief cannot be granted.

It is noted that Petitioner does not claim, nor did he in state court, a violation of his Sixth Amendment right to be clearly informed of the nature and the cause of the accusation against him. Such a claim has not been exhausted, but even if it were, it lacks merit. An information is constitutionally sufficient if it states "the elements of an offense charged with sufficient clarity to apprise a defendant of what to defend against." *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir.) (quoting *Russell v. United States*, 369 U.S. 749, 763-64 (1962)), *amended*, 768 F.2d 1090 (9th Cir. 1985). As explained by the Court of Appeal, before the information was corrected it stated that Petitioner was charged with a "felony" and described all of the elements of Section 647.6(c)(2), including Petitioner's two prior convictions under Section 288. From that description it would have been clear that the citation to Section 647.6(a)(1) was a mistake because Section 647.6(a)(1) is a misdemeanor, not a felony, and prior convictions are not an element of that offense. Because the information in its original form set forth the elements of Section 647.6(c)(2), not Section 647(a)(1), it was sufficiently clear to apprise the defense what to defend against at trial. In addition, the statutory subsection was corrected before any evidence was presented, and certainly before the defense case. As a result, there is no indication that any Sixth Amendment violation occurred.

Petitioner argues that he would have fared better at sentencing if the information had correctly identified Section 647.6(c)(2) prior to trial because then he would have known that his prior convictions were at issue, he would have filed a pretrial motion under *People v. Romero,*13

8

1    Cal.4th 531 (1996), to strike his prior "strike" convictions, he would have won the motion, his
2    sentence would have been a maximum of two years, and the jury would not have learned that this
3    was a "three strikes case." The prior convictions were charged in the information from the outset,
4    however. More importantly, Petitioner filed and lost a *Romero* motion after trial. He offers no
5    reason, nor is any apparent, that the motion would have succeeded if brought prior to trial. As a
6    result, there is no support for his claim that the error in the information prevented him filing a
7    successful *Romero* motion prior to trial.
8    Petitioner further claims that his constitutional rights were violated because the prosecutor
9    did not "prove" the existence of his prior convictions --- which he terms an "element" of Section
10   674.6(c)(2) --- at the preliminary hearing. He does not dispute that he had two prior convictions
11   under Section 288 for lewd conduct with a minor, or that their existence was adequately proven at
12   trial; he simply complains that they were not proven at the preliminary hearing. There is no
13   constitutional right to a preliminary hearing, however. *Peterson v. California*, 604 F.3d 1166,
14   1169 (9th Cir. 2010). As a result, Petitioner had no constitutional right to have elements of his
15   offense "proven" --- or to have evidence of such elements submitted --- at a preliminary hearing.
16   Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### 2. *Romero* motion

18   Petitioner claims that the trial court violated his right to due process by denying his
19   *Romero* motion to strike his prior "strike" convictions due to its untimeliness and by failing to
20   consider favorable evidence of his character and background.
21   The California Court of Appeal explained the background for this claim, and its reasons for
22   denying it as follows:

> Prior to sentencing, appellant filed a motion that asked the court to strike the prior conviction findings. Among other things, the appellant noted his age, (54 years old) and the fact that his prior convictions were 24 and 18 years old respectively. Appellant also noted that he had served in the military, and that he had operated a plumbing business for the past 16 years. Finally, appellant presented letters from his parents and from the Archdiocese of San Francisco urging leniency.
>
> The trial court addressed appellant's motion at a sentencing hearing. It stated it had tentatively decided to deny appellant's motion:

9

"I recognize my power to strike one or both of the defendant's prior strike offenses under Penal Code Section 1385(a) and the *Romero* and *Williams* line of cases. The Defendant has asked me to exercise my discretion to do so.

"In deciding whether to do so, I have considered the nature and circumstances of the current offense, the prior criminal conduct of the Defendant, the positive attributes of the Defendant, the information provided about his background and character; and considered whether under the particular circumstances of this case, the Defendant should properly be considered as falling outside of the Three Strikes Sentencing law.

"Specifically, I have considered that the Defendant has two prior serious felony convictions as defined by Penal Code Section 1192.7(c)(6). Each of those prior convictions is for a violation of Penal Code Section 288(a), lewd and lascivious conduct with a child under the age of 14.

"Although the charge for which Defendant was convicted in this case was not a serious or violent felony, as defined by Penal Code Sections 1192.7 or 667.5(c), it was clearly a crime of the same class of conduct as defendant's prior convictions. Defendant was again targeting a young post-pubescent boy, and the jury found that the defendant engaged in conduct motivated by an unnatural or abnormal sexual interest in the victim in this matter.

"The court also considered that the Defendant has done some good things in life. He served in the army from 1974 to 1979. He served as a police officer for two years in the mid 1980s. He started and maintained a successful plumbing business.

"Unfortunately, for much of the [defendant's] adult life, he has also been a substance abuser. According to the presentence report, the Defendant has used methamphetamine at least intermittently for the past 32 years.

"In addition to his two 288 priors, he has a prior felony conviction for a violation of Health and Safety Code Section 11377, for possession of methamphetamine. He has also successfully completed [a] subsequent diversion program for another 11377 violation.

"Considering the particulars of defendant's background and character, it appears evident that he has victimized other teens. The court does not know if the Defendant was himself a victim of sexual abuse in the army as he now asserts. Even if this were true, Defendant has had ample time and resources to seek therapeutic treatment for the effects of this experience. There's no evidence that he's ever done so in any meaningful way.

"Defendant's first arrest for conduct related to the nature of this case occurred in 1984 when Defendant was only 29 years old. Given that the Defendant is 54 years old today, this demonstrates a long-standing pattern of deviant sexual behavior. Despite a series of incarcerations between 1984 and 1996, I recognize that the Defendant was arrest free until 2005 when he was arrested for a misdemeanor violation of Health and Safety Code Section 11377. Pursuant to Penal Code Section 667(c)(3), the court is not compelled to consider this fact but I did take it into account.

"The Defendant completely denies this offense. He does not believe he did anything wrong. Without repeating the contents of the presentence report, the Defendant's proffered explanation as to how this offense happened is not credible.

10

> The [D]efendant has shown no remorse. Despite passage of time between this offense and the defendant's last know[n] offense of this nature, the court believes that the Defendant poses a significant threat to adolescent boys."

After hearing further argument from counsel on the issue, the court adopted its tentative conclusion and declined to strike either of appellant's prior convictions.

Appellant now contends the trial court erred when it denied his motion to strike one or more of the prior strike findings.

In *Romero,* our Supreme Court ruled that trial courts have the discretion under section 1385 to strike a prior conviction in furtherance of justice. (*People v. Superior Court (Romero), supra*, 13 Cal.4th at p. 531, 53 Cal.Rptr.2d 789, 917 P.2d 628.) In *People v. Williams* (1998) 17 Cal.4th 148, 69 Cal.Rptr.2d 917, 948 P.2d 429, the court articulated the factors trial courts should evaluate when exercising discretion under section 1385: "[T]he court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id*. at p. 161, 69 Cal.Rptr.2d 917, 948 P.2d 429.) The trial court is granted the discretion to decide whether to strike a prior conviction and its ruling may be reversed on appeal only where the court abused its discretion. (*People v. Garcia* (1999) 20 Cal.4th 490, 503, 85 Cal.Rptr.2d 280, 976 P.2d 831.)

We find no abuse here. The trial court identified and weighed the relevant factors in an almost textbook fashion. The court's ultimate decision to deny appellant's request is amply supported. The record indicates appellant is a drug abuser who has a more-than-20-year history of sexually abusing post-pubescent boys. The facts of some of appellant's prior offenses are truly shocking.[1] The fact that appellant committed yet another sexually themed offense against yet another post-pubescent boy demonstrated that appellant is and remains a serious threat to society. On these facts, we do not hesitate to conclude that the trial court did not abuse its discretion when it declined to strike either of appellant's prior convictions.

Appellant argues the court erred. Focusing on the court's comment that the present offense "was of the same class of conduct as defendant's prior convictions" appellant argues the court "impermissibly treated [his current conviction] as an attempted child molestation conviction which it was not." While the court did characterize appellant's current offense as being in the "same class of conduct" it is clear the court was referring to the fact that appellant was continuing to commit sex related offenses against post-pubescent boys. The comment was entirely appropriate and certainly does not demonstrate the court abused its discretion.

Appellant also argues his position is supported by *People v. Bishop* (1997)

---

[1] According to the probation report, in one instance, appellant spent "three days with the 14 year old victim for the purposes of getting to know him in an effort to adopt him. The foster mother gave her consent for the defendant to stay in her home. According to the victim ... the defendant allegedly gave him a massage then he took the victim's hand and placed it on [the defendant's] penis and masturbated using the victim's hand."

11

> 56 Cal.App.4th 1245, 66 Cal.Rptr.2d 347. However, the court in that case simply ruled the trial court did not abuse its discretion when it struck two prior strikes for a defendant who had been convicted of petty theft. The fact that the *Bishop* court affirmed the trial court's discretionary decision to strike two strikes does not mean the trial court here abused its discretion when it declined to exercise its discretion to strike appellant's strikes.

*Kilmer*, 2010 WL 2338657 at *7-9 (footnote in original).

Petitioner's contentions that the trial court denied his *Romero* motion due to its untimeliness and failed to consider evidence of his character and background are contradicted by the record. The trial court denied the motion on its merits, not as untimely, and it discussed Petitioner's character and background, specifically his service in the armed forces and as a police officer, as well as his plumbing business, in explaining its reasoning. *See id.* at *7-8. Given this record, Petitioner's claim that his right to due process was violated because his motion was denied as untimely and the trial court did not consider his background or character fails.

Petitioner argues that under California law, a *Romero* motion cannot be brought against a misdemeanor, and because Section 647.6(a)(1) is a misdemeanor, he could not bring his *Romero* motion until the citation to Section 647.6(a)(1) in the information was corrected to Section 647.6(c)(2) (a felony). As that correction was not made until the jury was selected, Petitioner argues, he was denied his "right" to bring a *Romero* motion prior to trial. He cites no law, however, and the Court is not aware of any, providing a right to bring a *Romero* motion before trial. Moreover, as discussed above, there is no evidence that such a motion would have had any greater chance of success had it been brought before trial.

Petitioner's arguments that the trial court abused its discretion in denying the *Romero* motion rely upon state law, and the state appellate court concluded that the trial court properly applied state law in denying the *Romero* motion. A determination of state law made by an intermediate appellate court must be followed and may not be "disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Hicks v. Feiock*, 485 U.S. 624, 629-30 & n.3 (1988). There is no data, let alone persuasive data, that the California Supreme Court would have decided differently than the California Court of Appeal that the *Romero* motion was properly decided. Indeed, the California Supreme Court's denial of the petition for review would indicate otherwise. As a result, this

12

1   Court cannot disturb the California Court of Appeal's conclusion that the trial court properly
2   applied state law in denying the *Romero* motion.
3         Lastly, Petitioner summarily asserts that his second "strike" conviction --- for lewd and
4   lascivious conduct with a minor under California Penal Code Section 288 --- was "not a strikeable
5   offense" under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), and *Blakely v. Washington*, 542
6   U.S. 296, 303-04 (2004). *Apprendi* and *Blakely* did not concern or address what offenses qualified
7   as "strikes" under California's Three Strikes Law. Rather, they addressed the right to have a jury
8   determine any fact --- other than the fact of a prior conviction --- that increases the penalty for a
9   crime. *Apprendi*, 430 U.S. at 466; *Blakely*, 542 U.S. at 303. There is no suggestion or indication
10  that the judge made any factual determination that should have been made by the jury under
11  *Apprendi* or *Blakely*.
12        Accordingly, Petitioner has not shown that he is entitled to federal habeas relief on this
13  claim.

14  **3.   Length of Sentence**

15        Petitioner claims that his sentence violates the Eighth Amendment's prohibition on cruel
16  and unusual punishment and his Fourteenth Amendment right to equal protection of the laws
17  because twenty-five years to life in prison is too lengthy for "what is normally sentence[d] as a
18  misdemeanor crime." While the framing of the issue by Petitioner may appear to have merit, as
19  set forth below, the claim does not prevail.
20        First, Petitioner offers no evidence to support his contention that violations of California
21  Penal Code Section 647.6(c)(2) are "normally" sentenced as a misdemeanor, nor would that
22  appear to be the case insofar as Section 647.6(c)(2) itself indicates that it is a felony. Technically,
23  Petitioner's claim is procedurally defaulted from federal habeas review. A federal court will not
24  review questions of federal law decided by a state court if the decision also rests on a state law
25  ground that is independent of the federal question and adequate to support the judgment. *Coleman*
26  *v. Thompson*, 501 U.S. 722, 729-30 (1991). The California Court of Appeal found that Petitioner
27  forfeited his right to raise this claim on appeal under California's contemporaneous objection rule,
28  i.e. because Petitioner did not raise the claim in the trial court. *Kilmer*, 2010 WL 2338657 at *9.

California's contemporaneous objection rule is an independent and adequate state law ground that precludes federal habeas review under the doctrine of procedural default where, as here, there was a complete failure to raise the claim at trial. *See Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999).

The Court acknowledges that an exception to the procedural default bar exists if the petitioner can demonstrate either (i) cause for the default and actual prejudice as a result of the alleged violation of federal law or (ii) that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Here, Petitioner offers no explanation, let alone a showing of cause and prejudice, for his failure to raise this claim in the trial court. Thus, Petitioner's claim is procedurally defaulted from federal habeas review.

Notwithstanding the foregoing, the claim fails on its merits. The Eighth Amendment contains a "narrow" proportionality principle that forbids "only extreme sentences that are grossly disproportionate to the crime." *Graham v. Florida*, 560 U.S. 48, 59 (2010). "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 289-90 (1983). *Graham* definitively adopted a test for determining whether a specific sentence is grossly disproportional:

> A court must begin by comparing the gravity of the offense and the severity of the sentence. "[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. If this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual.

560 U.S. at 60 (alterations and omissions in original) (citations omitted) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (opinion of Kennedy, J.)). In determining whether a sentence under a recidivist sentencing statute --- such as California's Three Strikes Law --- is grossly disproportionate, the court looks to whether such an "extreme sentence is justified by the gravity of [an individual's] most recent offense and criminal history." *Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004). In considering the relevance of the recent offense and criminal

14

history, a court must consider the "factual specifics" of an individual's priors to determine whether the conduct involved violence or was particularly serious. *Reyes v. Brown*, 399 F.3d 964, 970 (9th Cir. 2005).

One need only review the record of the sentencing proceedings to affirm the result here. The trial judge exercised his discretion to consider the full circumstances of the Petitioner's background, including that this was not an isolated incident. Petitioner's prior offenses of sexual molestation --- one of which involved Petitioner having the 14-year-old victim masturbate him --- are particularly serious and raise public safety concerns, especially given that the victims are among the most vulnerable. The present offense involved showing the 13-year-old victim pornography, talking to him at length about sex, asking him sexually explicit questions, and exposing himself to him.[2] While there was no physical contact, the offense could reasonably be viewed as serious given the fact that Petitioner was "a twice-convicted child abuser who has committed prior offenses against post-pubescent boys" and was committing "yet another sexually themed offense against a post-pubescent boy." *Kilmer*, 2010 WL 2338657 at *9. That the encounter was thwarted short of physical contact does not render the sentence unconstitutional. Here, the testimony at sentencing was compelling that the emotional damage to the victim was long lasting.

The Supreme Court has found that a longer sentence than Petitioner received for a less serious combination of offenses was not grossly disproportionate, *see Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003) (upholding sentence of 50 years to life petty for theft and past residential burglaries), and that the same sentence as Petitioner's for less serious offenses was not grossly disproportionate, *see Ewing v. California*, 538 U.S. 11, 23 (2003) (upholding sentence of 25 years to life for grand theft of three golf clubs and past residential burglaries and robbery). Under these circumstances, Petitioner's sentence is not grossly disproportionate under the Eighth Amendment,

---

[2] The Court of Appeal explained: "Appellant's acts on Sunday July 13, 2008, included: speaking to Thomas about sex, whether he masturbated, and whether he used Vaseline while doing so, telling Thomas a story about waking up and finding someone sucking on his penis, asking Thomas how big his penis was, and telling Thomas to measure his penis." *Kilmer*, 2010 WL 2338657 at n.2.

1    and therefore even if this claim were not procedurally defaulted, it fails on its merits.
2    ///

**CONCLUSION**

For the foregoing reasons, the Court DENIES the petition for a writ of habeas corpus. A certificate of appealability will not issue. Reasonable jurists would not find the Court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals. The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated: March 8, 2016

_____
YVONNE GONZALEZ ROGERS
United States District Court Judge